UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BRANDON MORA, KAREN M. MORA, AYNNE
RAMIREZ-POLANCO,

                           Plaintiffs,

                         - against -

                                       19-CV-05085-SJB

THE UNITED STATES OF AMERICA,

                         Defendant.
----------------------------------------------------------x
PAOLA MORA,

                           Plaintiff,

                         - against -

                                       20-CV-03600-SJB

THE UNITED STATES OF AMERICA,

                         Defendant.
----------------------------------------------------------x

**Findings of Fact and Conclusions of Law**

**BULSARA, United States Magistrate Judge:**

These cases arise out of an automobile accident between Plaintiffs' vehicle—a
Toyota RAV4—and a postal truck driven by an employee of the United States Postal
Service ("USPS" or "Postal Service").  Plaintiffs—Aynne Ramirez-Polanco, Brandon
Mora, Karen Mora, and Paola Mora—were seated in the vehicle when it was hit by the
postal truck in Forest Hills, New York.  According to Plaintiffs, their back, neck, and
knee injuries were caused by the collision between the postal truck and their vehicle.
They have sued the United States of America ("United States" or "Defendant") pursuant
to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, seeking
damages for their personal injuries.

The Court held a bench trial from October 17, 2022 through October 20, 2022. For the reasons set forth below, the Court enters judgment in favor of the United States.

The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). To the extent that any factual finding constitutes a legal conclusion, it is deemed a legal conclusion, and vice versa.

<u>FINDINGS OF FACT</u>

Having heard testimony from each of the four Plaintiffs, their respective experts, the USPS driver, and the Defendant's experts, the Court makes the following credibility and factual determinations.

Each of the four Plaintiffs credibly testified that while seated in their Toyota on November 20, 2017, the vehicle shook—whether back and forth or from side to side—in a manner consistent with an accident. And they testified credibly that prior to November 20, 2017 there was no damage to their vehicle. (*E.g.*, Tr. at 62:23–63:3 (Ramirez-Polanco)). But their credibility begins and ends there. There is no doubt that the postal truck collided with Plaintiffs' vehicle. The driver of the truck conceded as much during his testimony. (Tr. at 490:20–22 (Cruz)). Yet, Plaintiffs exaggerated the extent of the damage, going so far as to claim that damage *not* present on the day of the accident was caused by the postal truck. All four Plaintiffs claimed that Exhibit VV, which consisted of photographs taken nine days later, showed damaged to the Toyota from being hit by the postal truck.[1] The cause of the damage reflected in Exhibit VV is

---

[1] The photographs were taken by State Farm. (Tr. at 154:10–11 (Mora, B.)). And although at least one Plaintiff, Paola Mora, indicated she had not seen the photographs in Exhibit VV until trial, (Tr. at 271:20–272:3 (Mora, P.)), each Plaintiff claimed that the damage reflected in those photographs was caused by the postal truck on the day of the accident. State Farm's estimate accompanying the photographs in Exhibit VV is dated November 29, 2017, nine days after the accident. (Gov't Ex. VV).

the critical factual question in the case, because each Plaintiff contended that the postal truck caused all the damage to their vehicle and the postal truck accident was the sole cause of their injuries.  (Tr. at 65:1–10 (Ramirez-Polanco); Tr. at 66:8–18 (Ramirez-Polanco); Tr. at 119:18–120:5 (Mora, B.); Tr. at 154:18–20 (Mora, B.); Tr. at 122:3–20 (Mora, B.); Tr. at 172:16–19 (Mora, K.); Tr. at 191:21–23 (Mora, K.); Tr. at 191:24–192:8 (Mora, K.); Tr. at 259:21–262:19 (Mora, P.); Tr. at 268:10–12. (Mora, P.); Tr. at 209:9–20 (Mora, P.)).  Plaintiffs' claims are simply not credible.  The damage reflected in Exhibit VV stands in contrast to the damage in photographs taken by the postal truck driver, Exhibit G, on the day of the accident on November 20, 2017.  (Tr. at 480:7–22 (Cruz)).

Side-by-side comparisons of the photographs, reproduced below, demonstrate Plaintiffs seek recovery for vehicle damage not present on the day of the accident.  (The circles in Exhibit VV reflect damage not present in Exhibit G).







Besides exaggerating damage to the vehicle and attributing damage plainly not present on the day of the accident to the postal truck, Plaintiffs' credibility was further undermined by their failure to explain why, despite having smartphones, none of them took photographs of the car at the accident scene. (Tr. at 141:14–17 (Mora, B.); Tr. at 145:11–19 (Mora, B.); Tr. at 267:1–268:1 (Mora, P.); Tr. at 187:9–12 (Mora, K.)). Further, some of the Plaintiffs' testimony at trial about the manner and extent of the accident stood in stark contrast with their deposition testimony, undermining their trial testimony even further. For example, they gave accounts at their depositions about what happened during the accident that were either implausible or were in contrast to what they claimed at trial—(*e.g.*, Tr. at 146:11–17 (deposition testimony of Brandon Mora indicating that the car, after impact, was "mounted on the curb"))—or vice versa. Karen Mora, for instance, claimed at her deposition that the only damage to the car was to the mirror; but at trial she claimed the postal truck caused scratching and other damage. (*Compare* Deposition Testimony of Karen Mora, Gov't Ex. NNN at 80:25–81:3 (Q: "Besides the damage to the mirror, any other damage to the car that you saw?" A: "That I saw, no."), *with* Tr. 189:17–19 (Mora, K.) (Q: "Do you recall there being any damage besides the mirror to the car?" A: "Yes. The scratches to the car.")). Brandon Mora indicated during his deposition that there was no denting created by the postal truck. (Deposition Testimony of Brandon Mora, Gov't Ex. MMM at 80:3–6 (Q: "Besides the damage to the mirror and the scratches on the front left side, any other damage to the car?" A: "No.")). But at trial, he claimed the dents in Exhibit VV were caused by the truck. (Tr. at 143:16–18 (Mora, B.) (Q: "There were no dents to your Aunt Paola's vehicle from the accident; correct?" A: "There was.")).

5

The confluence of these factors and total absence of credibility to Plaintiffs' account deprives their testimony of any weight. *Salahuddin v. United States*, 564 F. Supp. 3d 75, 81 (E.D.N.Y. 2021) ("Since plaintiff's testimony about the crash is inconsistent, contradicts her deposition testimony, and is at odds with photographs taken of the scene, I do not credit it."); *Williams v. United States*, 597 F. App'x 647, 648 (2d Cir. 2015) ("The District Court concluded that Williams was not a credible witness both as to her trial testimony and as to her representations to the doctors who diagnosed her. This credibility determination was supported by photographic evidence that the underlying accident was not as severe as plaintiff testified[.]").[2]

In sum, Plaintiffs were not credible witnesses, in large part because they claimed damage to their vehicle that was not present on the day of the accident. The Court does not accept any of their testimony beyond their statements that the postal truck hit their vehicle. And because any and all claims of injury arising from the events underlying these cases depend entirely on Plaintiffs' testimony, which I reject in its entirety, Plaintiffs simply cannot meet their burden of proving causation.

In contrast, the Court found the testimony of Dr. Elaine Serina—an accident reconstruction and biomechanical expert—to be credible and persuasive on a number of

---

[2] "There were additional instances of inconsistencies which gave particular meaning to the maxim: *falsus in uno falsus in omnibus*." *Thalrose v. United States*, No. 85-CV-0142, 1991 WL 148502, at *2 (E.D.N.Y. July 17, 1991). Brandon Mora testified that while in Court testifying, he was experiencing pain of an 8 on a scale of 10. (Tr. at 126:10–12 (Mora, B.)). Karen Mora testified similarly. (Tr. at 173:6–8 (Mora, K.)). Such testimony is not credible and is exaggerated. A witness experiencing that level of pain while testifying would be doubled over in pain, unable largely to move, show visible discomfort, ask for breaks, and show limited range of motion in Court. Indeed, Plaintiffs' expert, Dr. Weissberg, testified that pain of an 8 would be "disabling." (Tr. at 357:3–4 (Weissberg); Tr. at 389:23–390:12 (Weissberg)). None of that was present during the testimony of these plaintiffs.

points.[3]  Dr. Serina conducted a reconstruction analysis of the accident and concluded
that the Toyota "experienced an extremely low-speed sideswipe contact." (Tr. at 536:1–
2 (Serina)).  Her analysis concluded that the damage to the Toyota RAV4 "primarily
occurred to the left outside rearview mirror." (Tr. at 538:20–22 (Serina)).  She noted
that the photograph of the Toyota taken on the day of the accident—Exhibit G—showed
no dents or scratches to the driver side panel. (Tr. at 540:19–22 (Serina)).  Nor was
there any damage to the "A Pillar"—the structure that frames the windshield. (Tr. at
539:13–15, 540:25–541:5, 542:20–25 (Serina) ("In particular if you look at the point
where the A pillar and the fender come together, the gap there again is even throughout.
There's no shifting or misalignment between the two parts as those two come
together.")).  She also noted the absence of denting or scratching was verifiable by the
reflections seen in the photograph—they were continuous and unbroken. (Tr. at
540:25–541:5 (Serina)).

In contrast, the pictures taken several days later, in Exhibit VV, show damage not
visible on the day of the accident.  She explained: "[T]here is a clear noticeable dent with
horizontal scratches running through the dent, a number of horizontal white scratches
running through the dent.  At the place where the A pillar and the fender come together,
you can see there's a dent on the A pillar as well as the spacing between the A pillar and
the fender." (Tr. at 544:24–545:7 (Serina)).  In addition, "[t]here is also a scratch . . .
that runs from the front portion of the driver's door going to—rearward and angled a

---

[3] The Court need not evaluate any of the medical or injury testimony offered by
Plaintiffs, their experts, or Defendant's experts, because the threshold question of
whether the postal truck caused the damage claimed is dispositive and resolves the case
in its entirety.

little bit down towards the back of the vehicle all the way into the driver's side rear door and that scratch also goes into the pocket for the door handle," as reflected below:



EXHIBIT VV

(Tr. 545:22–546:3 (Serina)).

Dr. Serina explained that the damages reflected in the photos, Exhibit VV, were simply not consistent with a sideswipe by a postal truck:

> The other point I noticed was that if you look at the door handle area, the scratch actually goes from the rear door and then it goes into the pocket of the door handle and then pops back up again. And if this were caused by a vehicle or an object just sliding past, I don't see a physical explanation for why whatever is sliding past would now penetrate into the pocket and then slide back out of the pocket again and without any obvious damage to the door handle here which sticks out further from the car door body.

(Tr. at 557:7–15 (Serina)).

Plaintiffs had no credible or plausible rebuttal to Dr. Serina's conclusion that the damage recorded in the photographs in Exhibit VV could not have been caused by the postal truck and was not consistent with the damage recorded in the photographs taken immediately after the accident.  (As noted, this conclusion also comports with common

sense and a plain, side-by-side comparison of the photographs). Plaintiffs did not have their own accident reconstruction expert. And their attempts to attack Dr. Serina on a multiplicity of grounds—bias, compensation, and prior testimony—found no resonance with the Court.

CONCLUSIONS OF LAW

Because the "underlying incident occurred in New York," New York law applies under the FTCA. *Schroeder v. U.S. Postal Serv.*, 768 F. App'x 100, 100 (2d Cir. 2019) (citing *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012)). Plaintiffs' claims sound in negligence, and they must establish: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). These claims are easily resolved on the third element: causation.

In a car accident case, a plaintiff must "demonstrate that the accident at issue was the cause of the injury." *Wirt v. United States*, 732 F. App'x 32, 34 (2d Cir. 2018) (citing *Pommells v. Perez*, 4 N.Y.3d 566, 572 (2005)); *see also Bugge v. Sweet*, 90 A.D.2d 858, 859 (3d Dep't 1982) (holding plaintiff must "establish by a fair preponderance of the credible medical evidence that the injury complained of was . . . causally related to the occurrence"), *aff'd*, 61 N.Y.2d 710 (1984).

Plaintiffs did not establish that the accident—the collision between the postal truck and their vehicle—caused their injuries. The proof is in the photographs. Simply put, photographs taken immediately after the accident (Gov't Ex. G) show minimal to no damage to the vehicle. Photographs taken several days later (Gov't Ex. VV), when the vehicle was garaged and inspected for insurance, show damage—significant dents and scratches—not present on the day of the accident. *Supra* at 3–4; (*see also* Tr. at 641:8–

9

12 (Serina) ("[T]here are inconsistencies of the photos from the insurance versus the photos at the scene[.]")).  Yet each Plaintiff testified that the damage reflected in Exhibit VV caused their injuries.  But if the postal truck did not cause the damage reflected in Exhibit VV—which it could not have, since that damage was not present on the day of the accident—the postal truck and Defendant could not have caused Plaintiffs' injuries. There was no evidence in the record to causally connect the damage to the Toyota—as reflected in Exhibit VV—to the Defendant's postal truck.  Plaintiffs testified incredibly that the damage in Exhibit VV was present on the day of the accident—but the day-of photographs belie any suggestion that the damage to which they attribute their injuries is attributable to the postal truck.  This disharmony between the photographs suggests strongly that Plaintiffs' account was not plausible, and the postal truck did not cause the damage to the Toyota, and thus did not cause their injuries.

The lack of causation was also aptly demonstrated by Defendant's accident reconstruction expert.  Defendant's expert reasonably and credibly explained that the damage reflected in the post-accident photographs simply could not have been caused by the postal truck.  In response, Plaintiffs offered a blunderbuss ineffective cross-examination which was unpersuasive.  The Court found unpersuasive the arguments that Defendant's expert was biased or that her conclusions were unreliable because she did not reach a conclusion about which party was at "fault."  None of these arguments, or any of the other various missives lobbed at her, found any resonance with the Court, particularly since Plaintiffs offered no reconstruction expert of their own.[4]

---

[4] For example, seeking to impugn an expert's credibility on the amount of her fee or the number of times she has testified carries no persuasive power when the same is true for each of plaintiffs' experts.

Nor were the various, and wildly divergent, theories of the accident that were just lawyer speculation, not supported by any evidence, sufficient to establish causation. (*E.g.*, Tr. at 612:8–11 (Woycik) ("[I]f a truck was going to the right towards the parked car and was gouging the right . . . ?"); Tr. at 612:23–25 (Woycik) ("[T]he truck after hitting it in the rear could have turned sharply to the left and the back of the truck then would have moved to the right a little bit . . . ?"); Tr. at 674:4–5 (Kittrell) ("Is it possible that the truck backed into the front left fender . . . ?"); Tr. at 801:10–14 (Woycik) ("The truck had to hit it at an angle causing the scrape on the tailgate in the front of the -- front of the truck to fender.  He hit it, he woke up, he then turned to the left, scraped the rest of the car, pulled up, backed up, knocked offer [sic] the right -- the left front fender.")).  Lawyer argument—unsupported by a fact or expert witness or any document—cannot close an evidentiary gap.

Plaintiffs' own experts—Drs. Weissberg and Khakar—did offer causation opinions.  They contended that Plaintiffs' injuries were caused by the postal truck's hitting their vehicle.  (Tr. at 335:10–13 (Weissberg); Tr. at 352:10–15 (Weissberg); Tr. at 440:19–25 (Khakar); Tr. at 446:19–447:1 (Khakar)).

This testimony is insufficient to overcome the common-sense inferences of no-causation (from the photographs) or Defendant's accident reconstruction analysis.  For one thing, Plaintiffs' experts were drawing causation conclusions from Plaintiffs' accounts of the accident; they accepted their accounts of the accident and broadly stated that Plaintiffs' injuries were consistent with the accident.  And they were doing so years after the accident, in 2021.  (Tr. at 305:14 (Weissberg); Tr. at 339:5 (Weissberg); Tr. at 355:16–17 (Weissberg); Tr. at 450:7–10 (Khakar)).  Since these opinions were entirely derivative of Plaintiffs' testimony, they prove equally unreliable.

But Plaintiffs' experts were not presented with the photographs or made aware of other possible accidents or subsequent post-accident damage to the vehicle.  In other words, at best Plaintiffs' experts could opine about whether Plaintiffs' injuries were caused by *an* accident; they could not attribute the accident to the Postal Service, or know anything about the nature of the accident.  (Tr. at 372:8–11 (Weissberg) (Q: "So, when you generated your report in June of 2021, you didn't know whether it was a sideswipe or a T-bone impact or a rear end collision, did you?"  A: "I don't have a direct recollection."); Tr. at 373:5–7 (Weissberg) (Q: "So, going back to the question you have no specific recollection of the nature of the impact, correct?"  A: "Other than they had an impact."); Tr. at 452:25–453:4 (Khakar) ("I just listen to the patient that . . . he had an accident and there was never pain before and now there is and if the diagnostics correlate with it.  So that's what I go based on rather than the actual forces."); Tr. at 453:9–14 (Khakar) (Q: "And you did not make an effort to find out the nature of the car accident?"  A: "I made a small effort.  She was in a car and sideswiped or struck on the side.  That's the extent to [sic] what I got from it.  I didn't go into more investigations of it.  I dealt with the medical side of it."); Tr. at 454:24–455:2 (Khakar) (Q: "Isn't it the case that when you gave your expert opinion, your expert report, you had no understanding of the impact of the car other than there was an impact?"  A: "Correct.")). Their causation opinions, in other words, were generic conclusions based on the information provided by Plaintiffs themselves.  But those opinions shed no light on the causation question presented by this case: whether the injuries were caused by the postal truck—as reflected in Exhibit G—as opposed to some other accident that is depicted in Exhibit VV, caused by someone other than the Postal Service.  *Cf. Avlonitis v. United States*, No. 16-CV-2521, 2020 WL 1227164, at *7 (E.D.N.Y. Mar. 13, 2020) ("In

the absence of an explanation of the basis for concluding that the injury was caused by the subject accident, and not by other possible causes evidenced in the record, an expert's conclusion that plaintiff's condition is causally related to the subject accident is mere speculation insufficient to support a finding that such a causal link exists." (quoting *Evans v. United States*, 978 F. Supp. 2d 148, 172 (E.D.N.Y. 2013)).

Why was there new and additional damage from the time the accident happened on November 20 and when photographs were taken by State Farm several days later? What could have caused the additional damage?  An attempt to bolster their claims through the fabrication of evidence?  A subsequent accident?  The Court need not speculate.  Each Plaintiff was required "to establish, 'that the injury was caused by the accident, as opposed to other possibilities evidenced in the record.'"  *Brutton v. United States*, 687 F. App'x 56, 57 (2d Cir. 2017) (quoting *Diaz v. Anasco*, 38 A.D.3d 295, 296 (1st Dep't 2007)).  And New York law "requires that a plaintiff adduce expert testimony to rule out alternative causes of injury that appear in the record."  *Id.*

Plaintiffs failed to do so.  Damage to the vehicle immediately after the accident is inconsistent with the damage recorded several days later, and Plaintiffs did not rule out the common-sense inference that something other than the postal truck caused the additional damage.  The suggestion, advanced by Plaintiffs' lawyers, that the photographs taken immediately after the accident did not show the area of damage is not persuasive.  As discussed, and seen above, pictures of the same areas—the rear-view mirror and the door handle, for example—reflect no damage on the day of the accident but show different or additional damage a few days later.

Without any credible causation evidence, each of the Plaintiffs have failed to demonstrate Defendant's negligence by a preponderance of the evidence.  And as such,

the Clerk of Court is directed to enter judgment in favor of the United States and close

both of these cases.

SO ORDERED.

/s/ *Sanket J. Bulsara*  November 28, 2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York